UNITED STATES, Appellee,

v.

Private E2 Lawrence M. YOUNGBERG III, 530–74–9731, United States Army, Appellant.

ACMR 9201589.

U.S. Army Court of Military Review.

Nov. 5, 1993.

**636**

For Appellant: Captain Michael E. Smith, JAGC, Captain Clement B. Lewis, III JAGC (on brief). Captain Michael A. Egan, JAGC.

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Thomas E. Booth, JAGC USAR, Major Joseph C. Swetnam, JAGC (on brief). Major James L. Pohl, JAGC.

Before CREAN, MORGAN, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, Judge.

Appellant was tried at a general court-martial before a panel composed of officer members. Contrary to his pleas, he was convicted of premeditated murder and an indecent act in violation of Articles 118 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 918 and 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for life, total forfeitures, and reduction to Private E1.

Before this court the appellant contends, inter alia, that he was denied his right to a speedy trial under Rule for Courts–Martial 707 [hereinafter R.C.M.]. We disagree, and hold that R.C.M. 707 does not apply when an accused is beyond the jurisdictional reach of the government.

### I.

The victim in this case, a promiscuous, thirty-year old German national female, known as the "Biker Lady" to American soldiers who frequented a local drinking establishment in Bad Kreuznach, Germany, was brutally murdered on 24 August 1991. Her body, completely naked except for a pair of white athletic socks, was found at a hilltop picnic site, impaled on a two-foot long wooden stake which had been driven into her vagina, through her abdominal cavity up to the level of her liver. Her mouth and throat had been stuffed with small stones and her head partially crushed by repeated blows from a ten-pound piece of concrete.

The appellant was arrested on 25 August 1991 by German police. On 26 August 1991, he was arraigned in German court and ordered into confinement by a German District Judge. These court-martial charges were not preferred until 18 December 1991, after a sanity board had been conducted and German autopsy, police, and laboratory reports were completed and translated. The Article 32, UCMJ, investigating officer's report was subsequently completed on 10 March 1992. The German authorities finally released jurisdiction to the government on 6 May 1992, the day after they were informed that capital punishment could be excluded as a potential punishment at appellant's court-martial. Two days later, on 8 May 1992, the case was referred to trial by general court-martial, and the appellant was eventually arraigned on 10 June 1992. He had been in pretrial confinement 290 days and never demanded a speedy trial.

There is no dispute over the fact that German authorities asserted immediate investigatory and prosecutorial control in this case and refused to release jurisdiction until they were assured in writing that the death penalty would not be an option at appellant's trial. Before the government

could provide this noncapital assurance, however, it had to complete a number of time-consuming pre-preferral and pre-referral actions in order to make an informed determination.[1] The real question is how much, if any, of the time during this period is accountable to the government for speedy trial purposes.

We note the absence of any evidence in the record reflecting a government request, either express or implied, that German officials assert or retain jurisdiction. To the contrary, the government actions exhibited an apparent good faith effort to obtain jurisdiction from the German authorities in accordance with United States policy to maximize jurisdiction in such cases.[2]

## II.

Appellant moved at trial for dismissal of the charges against him on three grounds: the 120–day rule of R.C.M. 707, the 90–day presumptive rule of *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166, 1971 WL 12477 (1971), and the Sixth Amendment standard set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Before this court, appellant contested only that portion of the military judge's ruling which denied his motion based upon the 120–day rule of R.C.M. 707.

The current version of R.C.M. 707 provides in pertinent part, "The accused shall be brought to trial within 120 days after ... preferral of charges...." R.C.M. 707(a)(1). The only periods of time that may be excluded in calculating whether the maximum of 120 days has been exceeded are those covered by stays issued by appellate courts and other pretrial delays approved by a military judge or the convening authority. R.C.M. 707(c). The purpose of the revised rule is "to provide guidance

for granting pretrial delays and to eliminate after-the-fact determinations as to whether certain periods of delay are excludable. This rule amends the former rule, which excluded from accountable time periods covered by certain exceptions." R.C.M. 707 analysis. The harsh and exclusive remedy for failure to comply with this right to a speedy trial is dismissal of the affected charges, with or without prejudice, depending upon the application of four specified criteria. R.C.M. 707(d).

■ Appellant was arraigned 175 days after the charges were preferred against him on 18 December 1991. No pretrial delays had been requested or approved. Nevertheless, the military judge found that the accused's right to a speedy trial under R.C.M. 707 had not been violated, and framed the issue in the following terms:

> Applying the requirements of Rule for Court–Martial 707, I find that accountability runs from the date of preferral of charges 18 December 1991. The government is, therefore, required to bring the accused to trial within 120 days of 18 December 1991, excluding any delays approved by the convening authority or the military judge. *I find no evidence of any delays previously approved by the convening authority or the military* [judge]. However, I find that the following periods of time are excludable delays under Rule for Court–Martial 707c. Those periods being 8 January to 31 January 1992 for a period of 23 days. I find that this time was necessary to secure the availability of substantial witnesses for the Article 32 Investigation. I find that the period 11 March 1992, which is the date the Special Court–Martial Convening Authority forwarded his recommendation to the Staff Judge Advocate until 6 May 1992, which is the date of

1. *See* stipulated chronology of events, appended to this opinion.

2. *See* Army Regulation 27–50, Legal Services: Status of Forces Policies, Procedures, and Information, para. 1–4a (1978); U.S. Army Europe Regulation 550–50, Foreign Countries: Exercise of Foreign Criminal Jurisdiction Over US Personnel, para. 13b (11 January 1990); and U.S. Army Europe Regulation 27–10, Legal Services: Military Justice, para. 7b (28 August 1990). The requirement is not merely to maximize jurisdiction, but to expeditiously investigate and process cases pending a final determination of jurisdiction.

release of jurisdiction, is excludable, a period of 56 days. I find that during this period of time no action could be taken by the U.S. authorities of the processing of the case due to the withholding of jurisdiction by the German authorities. All actions short of referral had been completed. Arraignment occurred on 10 June 1992. Excluding the delays previously mentioned, government accountability is then 96 days under Rule for Court–Martial 707. Accordingly I find that the accused's right to a speedy trial under Rule for Court–Martial 707 has not been violated. I understand the defense argument that only delays approved in advance of the delay—that is, prospective delays—may be excluded. The analysis of the rule states that one of the purposes of Change 5 is to eliminate after the fact determinations as to whether certain periods of time are excludable and *it is clear that I am making an after the fact determination as to whether certain periods of time are excludable.* Granting or denying delays at the time of the delay or prior to the delay is certainly preferable to trying to sort out delays after the fact, in this case, at a 39(a) session several months after the dates in question. However, I don't believe that Change 5 to the Rule is intended to prohibit me as the military judge from excluding periods of time from the 120 day period which are clearly contemplated by the Rule as being excludable (R. 169–170).[3] (emphasis added)

The periods of time excluded by the military judge would not have been accountable to the government under previous versions of R.C.M. 707, and they would almost certainly provide the basis for a pretrial delay under the current rule.[4] Unfortunately, substituting after the fact exclu-

sions for pretrial approvals is no longer an option for a trial judge.

■ We need not decide, however, whether this judge deliberately disregarded presidential rule-making authority and ignored the clear mandate of R.C.M. 707 by retroactively approving these delays. In *United States v. Powell*, 38 M.J. 153 (C.M.A.1993), the Court of Military Appeals had to decide when the speedy trial clock of R.C.M. 707 was triggered for purposes of government accountability. The accused was absent without leave (AWOL) and charges had been preferred more than five years prior to the effective date of the current rule, and he was apprehended more than five months after its effective date. The court held that, where an accused has placed himself outside the reach of the government during all relevant times under R.C.M. 707 so that, by his own misconduct, it is physically impossible for the government to bring him to trial, the speedy-trial clock of R.C.M. 707(a)—which is fully wound and ready to run as a result of the relevant triggering event—does not begin to tick until the date on which the accused returns to government control. To the extent that our decision in *United States v. Bowles*, 37 M.J. 708, (A.C.M.R.1993) indicates otherwise, it is no longer controlling.

In this case, appellant was beyond the jurisdictional reach of the government during all relevant times under R.C.M. 707. An argument could be made that since it took the Germans only one day to release jurisdiction after their precondition regarding the death penalty was satisfied, the government itself caused this delay by its failure to act in a more timely manner. It follows that if a waiver of primary jurisdiction is automatic in a noncapital referral, the government effectively had control of the appellant and could legally have pro-

---

**3.** "Reasons to grant a delay might, for example, include the need for: time to enable counsel to prepare for trial in complex cases ... time to complete other proceedings related to the cases; time requested by the defense; time to secure the availability of the accused, substantial wit-

nesses, or other evidence ... or additional time for other good cause." R.C.M. 707 discussion.

**4.** *See, e.g., Hall v. Thwing*, 30 M.J. 583, 585, for the proposition that an accused is "unavailable" for trial if the Germans are considered properly

ceeded to trial on one day's notice.[5] The problem with this argument is that it ignores the fact that the government had no control over the German autopsy, which was not received until late October or translated until early December 1991, or the German police report, which was not sent to the Criminal Investigation Command (CID) until 29 November 1991, or the German laboratory report, provided on 2 December 1991. It also presupposes that a noncapital referral decision could or should appropriately have been made before this case was fully investigated, and that the German authorities would automatically release jurisdiction to the Government without knowing critical facts and circumstances surrounding the murder. Finally, it would force the convening authority to either make a premature noncapital referral decision or to grant an indefinite pretrial delay in a case over which the government was otherwise powerless to act. Absent any evidence of bad faith, we are not prepared to impose such a burden.

Appellant was arraigned on 10 June 1992, thirty-four days after the German waiver of primary jurisdiction. Under these facts, we hold that the R.C.M. 707 speedy trial clock did not begin to run until the government acquired jurisdiction on 6 May 1992, and that appellant's rights thereunder were not violated.

In light of the Court of Military Appeals' recent decision in *United States v. Kossman*, 38 M.J. 258 (C.M.A.1993), we have also tested this record for compliance with Article 10, UCMJ, and conclude that the government acted with reasonable diligence in this extremely serious, exceptionally complex, and politically sensitive case involving a sanity board, expert medical testimony, German and stateside witnesses, written translations of over 100 statements, reports, tests, and other documents, and a voluminous Article 32, UCMJ, investigation. Once jurisdiction was finally obtained, the government moved with dispatch to bring these charges to trial. See

not to have released jurisdiction by the 120th day.

*United States v. Smith*, 18 M.J. 625 (N.M.C.M.R.1984).

## III.

■ Appellant next contends that the military judge committed reversible error by using the words "moral certainty" in the instruction on reasonable doubt. We find this assertion without merit. *See United States v. Robinson*, 38 M.J. 30 (C.M.A.1993); *United States v. Gray*, 37 M.J. 730, 748–49 (A.C.M.R.1992); *see also United States v. Ginter*, 35 M.J. 799, 803 (N.M.C.M.R.1992), *pet. denied*, 37 M.J. 232 (C.M.A.1993).

■ The convening authority's action in this case failed to reflect a credit for twenty-one days of illegal pretrial confinement, which is a requirement under R.C.M. 1107(f)(4)(F). This was an error for which we will order corrective action. *United States v. Stanford*, 37 M.J. 388 (C.M.A. 1993). Since the total amount of confinement credit (347 days) was accurately recorded in the Report of Result of Trial, and an uncontradicted affidavit from a prison official states that appellant received full administrative credit for his unlawful pretrial confinement, appellant has suffered no prejudice and is not entitled to any additional relief. *United States v. Bales*, 34 M.J. 1217 (A.C.M.R.1992); *Stanford, supra.*

We have considered the remaining assertions of error, to include those raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them also to be without merit.

The findings of guilty and the sentence are affirmed. The record of trial is returned to the convening authority to correct his post-trial action to state the amount of credit for illegal pretrial confinement.

Senior Judge CREAN and Judge GONZALES concur.

5. In fact, appellant was actually confined in the U.S. Confinement Facility in Mannheim, albeit pursuant to a German court order.

## APPENDIX
## CHRONOLOGY OF EVENTS

| | |
|---|---|
| 24 AUG 91 | Murder of Tamara Wilke, a German National, off post in Bad Kreuznach, Germany |
| 25 AUG 91 | Accused apprehended |
| 26 AUG 91 | Accused arraigned before Judge Obenauer, District Court, Bad Kreuznach (German Court). Judge Obenauer issues Confinement Order.<br><br>Directing Chief Prosecutor Hillebrand requests that US authorities conduct psychiatric examination of accused.<br><br>MG Otjen issues Order to Conduct Sanity Board<br><br>2LT Mergens, PV2 Youngberg's commander, signs confinement order based on German order pursuant to AR 27–10 para 17–3(a) and USAREUR Reg 27–10 para 12d(1).<br><br>Accused transferred to Mannheim Confinement Facility. Accused receives pretrial confinement counseling from MAJ Hohensee, SDC 8th Inf Div at Bad Kreuznach. |
| 28 AUG 91 | Military Magistrate reviews confinement |
| 30 AUG 91 | US Government sends notification of incident to Germans pursuant to the Supplementary Agreement under the NATO SOFA. |
| 02 SEP 91 | Initial information of the murder is forwarded to the sanity board. |
| 18 SEP 91 | Germans provide written notification of the withdrawal of the general waiver of the primary right to exercise jurisdiction in this case. |
| 16 OCT 91 | Sanity board report initially written. |
| late OCT | CID receives German language autopsy |
| 06 NOV 91 | Sanity board report signed after review of medical records by final board member. |
| 07 NOV 91 | Sanity board report delivered to JAG office, Bad Kreuznach, Germany |
| 29 NOV 91 | Final German police Report drafted and sent to CID for translation. |
| 02 DEC 91 | German Crime Lab Report covering physical tests involving finger-print, DNA, blood, fiber and shoe print analysis tests performed on 15 different items drafted and sent to CID for translation. |
| 09 DEC 91 | German autopsy translation sent to CID in Bad Kreuznach from US forensic Pathology in Landstuhl Army Medical Center |
| 18 DEC 91 | Charges preferred against accused. Accused informed of charges. |
| 19 DEC 91 | Charges received and forwarded by SCMCA. |
| 20 DEC 91 | Article 32 officer appointed. |
| 30 DEC 91 | Article 32 officer provides list of witnesses |
| 02 JAN 92 | Defense counsel requests witnesses and verbatim Article 32 transcript. Defense also requests psychiatrist and investigator. |
| 07 JAN 92 | CID completes interim report. |
| 08 JAN 92 | First Article 32 session. Defense requests for verbatim transcript is granted. Article 32 officer requests 2 additional witnesses for the next session. Physical evidence was available but not viewed. |
| 16 JAN 92 | Second Article 32 session held. |
| 31 JAN 92 | Final Article 32 session held. Article 32 officer viewed evidence. |
| 06 FEB 92 | Article 32 transcript completed. |
| 10 MAR 92 | Article 32 report completed. |
| 11 MAR 92 | SPCMCA makes recommendation for capital referral. Recommendation hand carried to SJA the same day. |
| 16 MAR 92 | Defense requests psychology expert be appointed to defense team. |
| 20 APR 92 | Defense requested Dr. John, a neurologist be appointed to defense team and renewed request for psychiatrist and investigator. |

23 APR 92  German Prosecutor Half-mann relates willingness of Germans to release jurisdiction provided US Army provides binding statement excluding imposition of capital punishment.

05 MAY 92  SJA provides written opinion regarding capital referral.

06 MAY 92  Germans release jurisdiction in writing.

08 MAY 92  Charges are referred.

11 MAY 92  Charges are served.

10 JUN 92  Accused arraigned. Government states on the record ready for trial on 1 July 1992.