UNITED STATES

v.

Captain Robert E. NICHOLS, 415–23–1713, United States Air Force.

ACM 30742.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 6 April 1993.

Decided 22 June 1995.

Appellate Counsel for Appellant: Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, and Major Gilbert J. Andia, Jr.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, and Captain Timothy G. Buxton.

Before HEIMBURG, GAMBOA, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

BECKER, Judge:

This case presents issues of first impression concerning the interpretation of the speedy trial rules in R.C.M. 707, after the amendments to that rule made by Change 5 to the Manual for Courts–Martial.[1] Of particular significance in the Air Force, we consider whether the pretrial docketing procedure used by the Air Force Trial Judiciary results in "excludable delay" under R.C.M. 707(c).

A military judge sitting as a general court-martial convicted the appellant, despite his pleas,[2] of one specification of conduct unbecoming an officer, nine specifications of adultery, two specifications of indecent acts, and two specifications of sodomy, in violation of UCMJ Articles 133, 134, and 125, respectively.[3] His approved sentence is a dismissal and forfeiture of all pay. Appellant asserts the military judge should have dismissed all charges and specifications with prejudice, based on a violation of his right to speedy trial. We disagree and affirm.

## I. BACKGROUND

Appellant was a judge advocate assigned to Eaker Air Force Base, Arkansas, from late 1987 to late 1992. At first, he was an assistant staff judge advocate in the 97th Bombardment Wing. Later, he became the area defense counsel for Eaker, placing him under a separate chain of command under the Air Force Legal Services Agency (AFLSA).

Appellant divorced his second wife in August 1990, and shortly after that married Sarah D. They divorced in February 1992, after being separated for several months. Before their separation, the appellant and Sarah D. led a "swinging" lifestyle, that is, "[p]racticing the exchange of partners, especially spouses, for sex." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1815 (3d ed. 1992). After their separation, but before the divorce, the appellant had sexual affairs with a variety of other women, including clients, wives of clients, and civilian office workers. The parting between the appellant and Sarah D. was not amicable and, in the Spring of 1992, Sarah D. sent various materials exposing the appellant's sexual activities to Eaker Air Force Base authorities. This resulted in an investigation and, eventually, this court-martial.

The Commander, AFLSA, preferred charges on 29 May 1992.[4] The Article 32, UCMJ,[5] Investigating Officer (I.O.) set the Article 32 hearing date for 6 July 1992. On 16 June 1992, the appellant requested a delay in the hearing until 3 August 1992. The special court-martial convening authority (SPCMCA) granted the delay. On 20 July 1992, the appellant requested an additional

1. Exec. Order No. 12767, 56 Fed.Reg. 302 (1991).

2. Although pleading "not guilty," the appellant agreed to a confessional stipulation as to the facts of each offense. He did so pursuant to a pretrial agreement, in exchange for the convening authority's promise not to approve any sentence to confinement.

3. 10 U.S.C. §§ 933, 934, 925 (1988).

4. On 29 May 1992, the AFLSA commander also preferred another five Article 133 and Article 134 specifications, in addition to the specifications at issue here. The convening authority withdrew

these after the appellant entered his pleas. On 7 August 1992, the AFLSA commander preferred an additional Article 133 charge with eight specifications, an additional Article 134 charge with two specifications, and an additional charge and specification under Article 81 (10 U.S.C. § 881 (1988)). The convening authority withdrew all additional charges and specifications before the appellant entered pleas. Although the appellant moved to dismiss all charges and specifications on speedy trial grounds, the issue is moot for all but the charges and specifications of which the appellant was convicted. These were all preferred on 29 May 1992.

5. 10 U.S.C. § 832 (1988).

delay until 17 August 1992, which the SPCMCA also approved. The Article 32 hearing began on 17 August 1992. At this time, an Air Force defense counsel (Captain Coney) had been detailed to represent the appellant. However, the appellant waived the presence of that counsel and elected to proceed *pro se*. The I.O. finished taking evidence on 21 August 1992.

The I.O.'s report was served on the appellant on 8 September 1992. According to R.C.M. 405(j)(4), the appellant had five days (until 13 September) to file objections to the report. On 11 September, the appellant requested an extension to 18 September, which the SPCMCA approved. On 16 September, the appellant asked for a second extension to 25 September, which the SPCMCA also granted. Meanwhile, on 15 September, the SPCMCA had provided Captain Coney with his own copy of the Article 32 report. On 25 September, Captain Coney requested a further extension of the appellant's time to file objections to 28 September, and the SPCMCA again agreed. On 28 September, the appellant and Captain Coney submitted their responses to the Article 32 report. The general court-martial convening authority referred the charges on 13 October. The trial counsel served the charges on the appellant on 14 October. This brings us to the original detail of the military judge, and the docketing of the case for trial.

After referral, the Chief Judge of the U.S.A.F. Trial Judiciary's Eastern Circuit, Southern Region, Colonel Blommers, detailed himself to preside over the appellant's case. Judge Blommers did not set the case for trial on the first open date after expiration of the required five-day period following service of charges. *See* Article 35, UCMJ.[6] Instead, following standard Air Force Trial Judiciary practice, Judge Blommers contacted both trial counsel and Captain Coney, and received their input on a trial date. The parties found 9 December 1992 mutually agreeable. On 28 October, Judge Blommers notified the parties he had set trial to begin on 9 December.

In November 1992, the Chief of the Trial Judiciary Division, AFLSA (Judge Blommers' immediate supervisor), expressed concern to The Judge Advocate General that the appellant's trial might not be perceived as fair if presided over by an Air Force military judge. This concern stemmed from the AFLSA chain of command, where Air Force trial judges were under the command of the officer who had preferred charges against the appellant.[7] As a result, a U.S. Army military judge (Colonel Brownback) was detailed to replace Judge Blommers as the military judge. Judge Brownback's docket did not allow him to begin trial on 9 December. After discussions with both sides, Judge Brownback set trial to begin on 16 December.

Trial began on 16 December 1992, which was 201 days after charges had been first preferred. After arraignment, the appellant moved to dismiss all charges and specifications on speedy trial grounds. Specifically, the appellant argued the government had not brought him to trial within the 120 days mandated by R.C.M. 707(a), and that the charges should be dismissed with prejudice under the criteria set out in R.C.M. 707(d). The military judge denied the motion, finding the government accountable for only 77 days of delay, the remainder being excludable under R.C.M. 707(c). Because he found the 120-day standard had not been violated, the military judge did not enter findings as to the R.C.M. 707(d) factors relating to whether a dismissal of charges should be with prejudice.

Further trial proceedings were then stayed while the appellant pursued extraordinary relief from the appellate courts. This Court denied the appellant's petition. However, we ordered the military judge to enter findings on R.C.M. 707(d) factors. We did so because of the possibility that, on ordinary review of any conviction, we might agree with the appellant's basic R.C.M. 707 argu-

---

6. 10 U.S.C. § 835 (1988).

7. The AFLSA commander who had preferred the original charges on 29 May 1992 was, by this time, no longer in command. However, his successor had preferred the additional charges on 7 August 1992, and was still in command of AFLSA in November.

ment, and thus have to address whether to dismiss the charges with prejudice.[8] Appellant then petitioned the Court of Military Appeals for extraordinary relief, which that court summarily denied.[9]

Appellant's trial reconvened on 6 April 1993, and proceeded to its conclusion. Consistent with this Court's order, the military judge entered findings concerning R.C.M. 707(d) factors. He ruled that, even if the R.C.M. 707(a) speedy trial standard had been violated, the appellant had not been denied his constitutional right to speedy trial, and the R.C.M. 707(d) factors would not warrant dismissal of charges with prejudice.

## II. THE LAW OF SPEEDY TRIAL

A military member's speedy trial rights come from five sources: the Speedy Trial Clause of the Sixth Amendment, the Due Process Clause of the Fifth Amendment, UCMJ Articles 10 and 33,[10] R.C.M. 707, and case law. *United States v. Vogan*, 35 M.J. 32, 33 (1992). Appellant has raised issues under R.C.M. 707 and the Sixth Amendment, as well as the case law interpreting and applying those sources of law.

Under R.C.M. 707(a)(1), an accused must be brought to trial within 120 days after preferral of charges.[11] In the appellant's case, his R.C.M. 707(a) "clock" started ticking on 29 May 1992, when the charges were preferred. However:

> All periods of time covered by stays issued by appellate courts and *all other pretrial delays approved by a military judge or the convening authority* shall be excluded when determining whether the period in subsection (a) of this rule has run.

R.C.M. 707(c) (emphasis added).

█ R.C.M. 707(d) governs the remedy for a violation of R.C.M. 707(a). Such a violation will result in dismissal of the affected charges. However, such dismissal may or may not be with prejudice to the government's ability to reinitiate court-martial pro-

ceedings. Dismissal must be with prejudice if the accused has been deprived of his constitutional right to speedy trial (i.e., a violation of the Speedy Trial Clause of the Sixth Amendment). If the R.C.M. 707(a) violation falls short of constitutional magnitude, whether to dismiss with prejudice is determined by balancing four factors: the seriousness of the offense, the facts and circumstances leading to dismissal, the impact of reprosecution on the administration of justice, and any prejudice to the accused from the R.C.M. 707(a) violation. *See United States v. Edmond,* 41 M.J. 419 (1995).

█ Appellant's rights under the Sixth Amendment's Speedy Trial Clause exist separately from, and superior to, those under R.C.M. 707. The threshold event for application of the Speedy Trial Clause is either an arrest (or "apprehension," as we call it in the military; *see* Article 7, UCMJ [12]) or a formal charge. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). *See also Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). In the appellant's case, his Sixth Amendment speedy trial right was triggered when charges were formally preferred on 29 May 1992. To decide if a violation of the Speedy Trial Clause has occurred, we will apply and balance four factors: the length of pretrial delay, the reasons for the pretrial delay, whether the accused has demanded speedy trial, and prejudice suffered by the accused because of the delay. *Barker v. Wingo,* 407 U.S. 514, 531–32, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972). Of these factors, we will give especially strong weight to whether an accused has demanded speedy trial. *Id.*

## III. APPELLANT'S RIGHT TO SPEEDY TRIAL UNDER R.C.M. 707

The facts pertinent to the government's R.C.M. 707(a) accountability are not in issue,

---

**8.** *Nichols v. United States,* Misc.Dkt. No. 92–21, 1993 WL 52412 (A.F.C.M.R. 9 Feb. 1993).

**9.** *Nichols v. Brownback,* 38 M.J. 157 (C.M.A. 1993).

**10.** 10 U.S.C. §§ 810, 833 (1988).

**11.** The other triggering events for the 120–day "clock" at R.C.M. 707(a)(2)–(3) are not pertinent here.

**12.** 10 U.S.C. § 807 (1988).

but the legal effects of those facts are. Appellant agrees he requested delays in the Article 32 hearing and also for filing objections to the Article 32 report. Since the SPCMCA approved these delays, the appellant concedes R.C.M. 707(c) excludes them from the government's R.C.M. 707(a) accountability. However, the appellant disputes the military judge's calculation of the length of the excludable delays. The military judge used the date the appellant first requested a delay in the Article 32 hearing (16 June 1992) as the starting point for that delay. Appellant contends the front end of the hearing delay should be 6 July 1992, the date for which the Article 32 hearing first had been set. Concerning the appellant's time to file objections to the Article 32 report, the appellant argues that only 20–28 September 1992 was excludable under R.C.M. 707(c), because the government did not serve a copy of the Article 32 report on Captain Coney until 15 September, and Captain Coney had, by rule, five days to file objections. However, the military judge excluded the entire period from 11 September (when the appellant asked for his first extension) to 28 September 1992.

More important to the ultimate resolution of the R.C.M. 707 issue, the appellant also disputes the military judge's exclusion of all time resulting from his and Judge Blommers' docketing decisions, a total of 49 days. Appellant argues these were not "delays" within the meaning of R.C.M. 707(c), in that neither party requested them. In support of this argument, he cites a conversation with Judge Blommers on 17 December 1992, to which the appellant attested at trial in an affidavit. According to the appellant, Judge Blommers told him that he had made no "allocation" of delay in the case and, if he had done so, he would have set out such "allocation" in his 28 October 1992 letter setting trial.

The facts of this case and the appellant's arguments present important issues concerning the construction and application of R.C.M. 707:

1. What is a "delay," within the meaning of R.C.M. 707(c)? In particular, must a party request such a delay, or does any interval of time approved by the military judge or convening authority qualify? In this case, is the 49–day period resulting from the military judges' docketing decisions an excludable "delay?"

2. How do we calculate the length of excludable delays under R.C.M. 707(c)? Specifically, when a party has requested and been granted a delay in a hearing or an extension to his time to file a response, what date do we use as the front end of the excludable delay—the date of the request, or the previously set hearing or response-due date?

3. When an accused has detailed defense counsel for an Article 32 investigation, but elects to proceed *pro se*, is the government accountable under R.C.M. 707(a) for the time until it serves the detailed defense counsel with the Article 32 report?

### What is a "Delay" Within the Meaning of R.C.M. 707(c)?

This issue has brushed by the military courts a few times since the effective date of the Change 5 amendments to R.C.M. 707. *See United States v. Kossman*, 38 M.J. 258, 267 (C.M.A.1993) (Sullivan, C.J., dissenting); *United States v. Langer*, 41 M.J. 780, 785 (A.F.Ct.Crim.App.1995); *United States v. Scheffer*, 41 M.J. 683, 694 (A.F.Ct.Crim.App. 1995); *United States v. Youngberg*, 38 M.J. 635, 637–638 (A.C.M.R.1993). However, the definition of "delay" under R.C.M. 707(c) is an issue squarely presented here for the first time.

In common usage, a "delay" means an "act of delaying," "[t]he condition of being delayed," "[t]he period of time during which one is delayed," or "[t]he interval of time between two events," without regard to how it came about. AMERICAN HERITAGE DICTIONARY at 493. There is no requirement in R.C.M. 707(c) for someone to ask for a "delay" in order for an interval of time to be a "delay." Although R.C.M. 707(c)(1) outlines the procedure when a party requests a delay, that provision does not mandate a request as a condition for exclusion under R.C.M. 707(c). Indeed, the Discussion below R.C.M. 707(c)(1) makes clear that "time requested by the defense" is but one of many reasons a military judge or convening authority may

delay a case, and does not mention a "request" as a prerequisite for any other.

Appellant invites our attention to pre-Change 5 case law holding docketing delays, not expressly requested by the defense, to be attributable to the government under R.C.M. 707(a). *See United States v. Carlisle*, 25 M.J. 426 (C.M.A.1988); *United States v. Wactor*, 30 M.J. 821 (A.C.M.R.1990). However, the appellant misses the point behind the Change 5 amendments to R.C.M. 707(c). Before Change 5, R.C.M. 707(c) contained a long list of circumstances excusing the government from speedy trial accountability for certain delays. R.C.M. 707(c) was all about blame, and whether the government could squeeze a delay into one of the "pigeonholes" excusing it from responsibility. As a result, speedy trial litigation under R.C.M. 707 was often an exercise in finger-pointing and after-the-fact quibbling over who was to blame for a couple of days here or a handful of days there. *See, e.g., United States v. Ramsey*, 28 M.J. 370 (C.M.A.1989); *United States v. Cook*, 27 M.J. 212 (C.M.A.1988); *Carlisle; United States v. Givens*, 28 M.J. 888 (A.F.C.M.R.1989), *set aside and remanded*, 30 M.J. 294 (C.M.A.1990); *United States v. Raichle*, 28 M.J. 876 (A.F.C.M.R.1989); *Wactor.*

The Change 5 amendments to R.C.M. 707(c) did away with all this in one "sweeping revision." Captain Eric D. Placke, *R.C.M. 707 and the New Speedy Trial Rules*, THE REPORTER, Vol. 18, No. 4 at 1, 2 (December 1991). Gone are the "pigeonholes" of blame in favor of a single "no-fault" standard—"the government is accountable for all time prior to trial unless a competent authority grants a delay." MCM, 1984, app. 21 at A21–40 (1994 ed.). After-the-fact exclusion of time from the government's speedy trial accountability is no longer an option. *Youngberg*, 38 M.J. at 638; Placke at 2. Accordingly, pre-Change 5 case law, such as *Carlisle* and *Wactor*, addressing the blame allocation process is no longer apposite.

For the same reasons, Judge Blommers' supposed failure to make a delay "allocation" is irrelevant to whether his decision to set trial for 9 December 1992 qualified as excludable delay. Assuming the appellant's de-

scription of their conversation is accurate, we have no idea what Judge Blommers may have intended by this statement. Judge Brownback speculated he may have been influenced by a pre-Change 5 mind-set. If so, Judge Blommers would not be the first judge to find old habits hard to break. *See Youngberg*, 38 M.J. at 637–38. In any event, whatever Judge Blommers may have told the appellant about delay allocation simply has no bearing on whether a delay is excluded from the government's R.C.M. 707 speedy trial accountability.

We hold that the plain meaning of R.C.M. 707(c) is that any interval of time between events is a "delay" and, if approved by the appropriate authority, is excluded from the government's accountable time under R.C.M. 707(a). The decision whether to grant a delay is within the sole discretion of the convening authority or military judge, as appropriate. R.C.M. 707(c)(1) (Discussion). Decisions granting or denying delays, and as to the duration of delays, are reviewed for abuse of discretion. MCM, app. 21 at A21–40. However, there need not be a request for a delay from either the accused or the government before a delay is excludable under R.C.M. 707(c); the military judge or convening authority may approve a delay on his or her own initiative.

### The Front End of Approved Delays

Appellant contends the approved delays for the Article 32 hearing should be measured from 6 July 1992, the date first set for the hearing, and not 16 June, the date of his first delay request. Similarly, he argues his delays in filing objections to the Article 32 report should be measured from when the response was due, and not from when he requested his first extension. The government counters that this issue has already been decided against the appellant, citing *United States v. King*, 30 M.J. 59 (C.M.A. 1990), and *United States v. Longhofer*, 29 M.J. 22 (C.M.A.1989). We agree with the appellant.

We do not consider *King* and *Longhofer* as resolving this issue. Both opinions applied the pre-Change 5 version of R.C.M. 707(c),

and thus focused on allocating blame for delays—a process described by Judge Cox in *Longhofer* as "the salvage operation required of military judges and appellate courts faced with trying to allocate periods of delay long after the event occurred [footnote omitted]." 29 M.J. at 28. As discussed above, Change 5 made this case law obsolete.

Even if we found *King* and *Longhofer* applicable, they do not support the government's position. *King* and *Longhofer* rejected arguments that defense-requested delays should not be excluded from government accountability when the prosecution was not ready to go at the time of the request. *King*, 30 M.J. at 64. In neither case was there a firm hearing date or other set date for specific action at the time the defense requested the delays in question. In contrast, the appellant's Article 32 hearing had been set for 6 July 1992 at the time of his first delay request on 16 June.[13] When the Article 32 report was served on the appellant on 8 September, by rule (R.C.M. 405(j)(4)) he had a set response time of five days, until 13 September. In our view, it makes no sense to calculate the length of a delay from the date of the request, when the request refers to an event already set to happen on a specified date.

We also agree with the appellant's observation that the computation method used by the military judge, and urged on us by the government, would only promote speedy trial gamesmanship. If the length of a defense delay is calculated from the date of request, this would encourage eleventh-hour requests from the defense to minimize time excluded under R.C.M. 707(c). Conversely, such a method would encourage artificially early government delay requests to maximize the excludable delay. We do not believe such a construction of R.C.M. 707(c) would "secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." R.C.M. 102(b).

█ Accordingly, we hold that when a party requests a delay of an event, which at the time of the request has been set for a speci-

fied date, the length of the approved delay under R.C.M. 707(c) is measured from the date set for the event and not the date of the request. The military judge erred when he calculated the delays in the Article 32 hearing from 16 June instead of 6 July 1992, and the delays to submit the appellant's objections to the Article 32 report from 11 September instead of 13 September 1992.

### Service of Article 32 Report on Detailed Defense Counsel

Appellant argues the government is accountable for the time between the end of the Article 32 hearing (21 August 1992) and the date the I.O.'s report was served on the appellant's detailed defense counsel, Captain Coney (20 September 1992), even though the appellant elected to proceed *pro se* at the Article 32 hearing without Captain Coney. Appellant bases this argument on Air Force Regulation (AFR) 111–1, *Military Justice Guide*, paragraph 5–1f (30 Sep. 1988), which was in effect at the time of the Article 32 investigation. That provision reiterates the R.C.M. 405(j)(3) requirement to serve a copy of the Article 32 report on the accused, and further requires a copy to be served on "the defense counsel who represented the accused at the investigation" if that counsel is not assigned to the same base as the accused. Appellant contends Captain Coney "represented the accused" at the Article 32 investigation, although he did not attend. Appellant claims this representation, and Captain Coney's location at another base, required the government to serve Captain Coney with his own copy of the Article 32 report, and the government is accountable for the time it took to do that. Appellant's argument is without merit for two reasons.

█ First, the government was under no obligation to serve Captain Coney with his own copy of the report. We do not construe AFR 111–1, paragraph 5–1f, the same way as appellant. To the contrary, we believe the words "defense counsel who represented the accused at the investigation" plainly refer to

---

13. There is nothing in writing from the Article 32 I.O. setting 6 July 1992 as the hearing date, and we do not know when he did so. However, the parties stipulated the hearing had been set for 6 July when the appellant made his 16 June delay request.

a lawyer who was there. In that the appellant chose to act *pro se* at the Article 32 hearing, the government was duty-bound to serve a copy of the report only on him.

■ Second, even if we construe AFR 111–1, paragraph 5–1f, as the appellant wants, we still would find no speedy trial accountability for the time the government took to send Captain Coney his copy of the report. AFR 111–1, paragraph 5–1f, simply requires the government to send counsel a copy. It does not purport to change the basic rule of R.C.M. 405(j)(4), that an accused has five days to file objections *after the report is served on him.* Delay in sending a report to defense counsel would likely justify extensions in an accused's time to file objections, but would not change the government's speedy trial accountability under R.C.M. 707(a). The time between 13 September (when the appellant's response was first due) and 28 September 1992 (when he and Captain Coney filed their objections) was all excludable delay under R.C.M. 707(c).

### Government's R.C.M. 707 Accountability

Of the 201 days between preferral and trial, we find a total of 106 days are excludable delays under R.C.M. 707(c). This leaves the government accountable under R.C.M. 707(a) for 95 days. This is within the 120–day standard. Accordingly, we conclude the appellant was not denied his right to speedy trial under R.C.M. 707. Our step-by-step computations are in the Appendix to this opinion.

Because we conclude the appellant's right to speedy trial under R.C.M. 707 has not been violated, we need not decide whether any dismissal for violation of that rule should be with prejudice. However, we have reviewed the military judge's findings and conclusions regarding the factors for dismissal with prejudice in R.C.M. 707(d). The evidence supports his findings of fact, and we agree with his conclusions. If the R.C.M. 707(a) standard had been violated here, we would have dismissed the charges, but without prejudice to the government's ability to reinitiate court-martial proceedings.

## IV. APPELLANT'S RIGHT TO SPEEDY TRIAL UNDER THE SIXTH AMENDMENT

■ Although the appellant has relied primarily on R.C.M. 707, he has also raised arguments under the Speedy Trial Clause of the Sixth Amendment, and the record is sufficient for us to address this issue. As discussed above, we will apply the four *Barker v. Wingo* factors to the time from preferral of charges on 29 May 1992 to the start of trial on 16 December 1992: length of delay, reasons for delay, whether there was a demand for speedy trial, and prejudice to the appellant from the delay.

The nearly seven months between preferral and trial is not an unconscionably long period. Nearly two months of this delay were expressly at the appellant's request. Two weeks were because of a mental inquiry ordered under R.C.M. 706. Another six weeks are attributable to the docketing process. This was a complicated case involving, at one time, six charges and 30 specifications. There is no credible evidence of deliberate delay intended to inflict harm on the appellant or his ability to defend himself. While we have no doubt the interval between preferral and trial was not particularly pleasant for the appellant, the prejudice he suffered was no greater than is typical for any accused. Appellant continued to work, and was paid according to his grade and service. He was never under any form of pretrial restraint. There is no evidence the pretrial delay caused any impairment in the appellant's ability to defend himself. Finally, and most significantly, the appellant never demanded speedy trial. Appellant was not denied his constitutional right to speedy trial.

## V. CONCLUSION

The assignments of error are without merit. The approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

## AFFIRMED.

Senior Judge HEIMBURG and Judge GAMBOA concur.