# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and BORGERDING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class VICENTE C. TORRES**
**United States Army, Appellant**

ARMY 20111168

Headquarters, United States Army Cadet Command and Fort Knox
Timothy Grammel, Military Judge
Colonel Robert J. Cotell, Staff Judge Advocate

For Appellant: Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain Robert A. Feldmeier, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Elisabeth A. Claus, JA; Captain Sean P. Fitzgibbon, JA (on brief).

19 March 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LIND, Senior Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of failure to obey a lawful order for loading and firing a privately owned weapon within the cantonment area of Fort Knox; one specification of willfully discharging a firearm under such circumstances as to endanger human life; one specification of carrying a concealed weapon; and one specification of obstruction of justice in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (2006) [hereinafter UCMJ]. The panel sentenced appellant to a bad-conduct discharge, twenty-four months confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence and credited appellant with 199 days of confinement against the sentence to confinement.

This case is before the court for review under Article 66, UCMJ. Appellant raises several assignments of error, two which merit discussion but no relief. We hold appellant's right to a speedy trial under Rule for Courts-Martial [hereinafter R.C.M.] 707 was not violated, and appellant's convictions for both violating a lawful order and willfully discharging a weapon did not constitute an unreasonable multiplication of charges for findings or sentencing. We have also considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they are without merit.

## FACTS AND PROCEDURAL BACKGROUND

Appellant was suspected of firing his privately owned weapon in a barracks parking lot at Fort Knox, Kentucky on or about 17 July 2011. Appellant's chain of command restricted appellant to his battalion's Charge of Quarters (CQ) desk that same day. Appellant remained at the CQ desk until 21 July 2011. On that evening, appellant's chain of command restricted appellant to his off-post quarters until 28 July 2011—the date appellant entered into pretrial confinement at a local county jail. The original charges were preferred on 28 July 2011. The additional charges were preferred on 14 September 2011.

The Article 32, UCMJ, investigation [hereinafter Article 32] was scheduled for 24 October 2011. On 20 October 2011, appellant submitted an Individual Military Counsel (IMC) request. The day prior, on 19 October 2011, appellant submitted a request for delay of the Article 32 addressed to the Special Court-Martial Convening Authority (SPCMCA). The requested delay was for the period of time until the IMC request was "processed, barring any prior scheduling conflicts." On 22 October 2011, the SPCMCA granted the delay. On 28 October 2011, the IMC request was denied; however, the trial counsel was not informed of the denial until 3 November 2011. Trial counsel forwarded the denial to defense counsel on 4 November 2011. Defense counsel was on temporary duty working on other courts-martial from 31 October to 4 November 2011. Trial counsel was on leave from 5 November to 8 November 2011. On 9 November 2011, trial counsel, defense counsel, and the investigating officer rescheduled the Article 32 for 21 November 2011, the first available date when all parties would be available. On 18 November 2011, appellant filed a request for speedy trial. The Article 32 was held on 21 November 2011. Charges were referred on 8 December 2011 and immediately sent to the military judge for docketing. On 9 December 2011, the military judge docketed the trial for 19 December 2011. Appellant was arraigned on 19 December 2011.

At trial, appellant made a motion to dismiss for, *inter alia*, a violation of his right to a speedy-trial under R.C.M. 707. The military judge found the triggering date for the 120-day rule was the imposition of pretrial restraint on 17 July 2011. The military judge denied appellant's motion to dismiss, finding that the 28-day

2

delay for the Article 32 was properly approved prior to referral, and the 11-day delay between receipt of referred charges and arraignment was properly approved by the military judge. The military judge then "subtracted" these days and calculated the total delay at 116 days, within the 120-day requirement of R.C.M. 707.[1]

## LAW AND ANALYSIS

### *Appellant's Right to a Speedy Trial under R.C.M. 707*

Whether an accused received a speedy trial under R.C.M. 707 is a legal question that we review de novo. *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003) (citing *United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F. 1999)). However, the military judge's "findings of fact are given 'substantial deference and will be reversed only for clear error.'" *Id.* (quoting *Doty*, 51 M.J. at 465).

R.C.M. 707 provides that the "accused shall be brought to trial within 120 days after the earlier of: (1) preferral of charges; (2) the imposition of restraint under R.C.M. 304(a)(2)-(4); or (3) entry on active duty under R.C.M. 204." R.C.M. 707(a)(1)-(3).

The rule allows authorized personnel to approve delays, and therefore "exclude" time from the R.C.M. 707 120-day clock. R.C.M. 707(c). Prior to referral, any request for pretrial delay must be submitted to either the convening authority, the Article 32 officer (if the convening authority has properly delegated delay authority), or "if authorized under regulations prescribed by the Secretary concerned, to a military judge for resolution." R.C.M. 707(c)(1); *United States v. Lazauskas*, 62 M.J. 39, 41-42 (C.A.A.F. 2005); R.C.M. 707(c)(1) discussion. After referral, only a military judge can approve any pretrial delay. R.C.M. 707(c)(1). All pretrial delays approved by authorized personnel are excludable unless the decision to approve the delay was an abuse of discretion. *See Lazauskas*, 62 M.J. at 41 (citing R.C.M. 707(c)); *United States v. Arab*, 55 M.J. 508, 512 (Army Ct. Crim. App. 2001). There must be "good cause" for the delay and the length of time requested must be "reasonable" based on the facts and circumstances of each case. *United States v. Thompson*, 46 M.J. 472, 475 (C.A.A.F. 1997); *see also* R.C.M. 707(c)(1) discussion; R.C.M. 707(c) analysis at A21-42.

---

[1] Under R.C.M. 707(a)(b)(1), the date on which pretrial restraint is imposed shall not count for purposes of computing time under the rule; however, the date on which an accused is brought to trial—arraignment—shall count.

In sum, when this court reviews a military judge's denial of a motion for violation of speedy trial pursuant to R.C.M. 707, we must answer two questions: (1) was the delay granted by a person authorized to grant the delay; and (2) was the decision to grant the delay an abuse of discretion. *Arab*, 55 M.J. at 512. An abuse of discretion occurs when either there was not good cause for granting the delay, or the amount of delay granted was unreasonable under the facts and circumstances of the case. *Thompson,* 46 M.J. at 475.

On appeal, appellant argues that the military judge erred by finding the 28-day delay for the Article 32 was excludable and that the military judge abused his discretion by "improperly rel[ying] upon Rule of Practice Before Army Courts-Martial 1.1 to stop the 120 day clock" and by failing to approve the 11-day delay between his receipt of the referred charges and arraignment "in writing."

Appellant's first argument arises because the military judge's findings failed to identify *who* actually granted the 28-day delay for the Article 32: the military judge found only that "the request was approved." We also note that in his conclusions of law, the military judge held the 28-days are "attributable to the defense as a defense requested delay." However, as our superior court noted in *Lazauskas*, "the current version of R.C.M. 707 focuses on whether a period of time is excludable because a delay has been granted, which is in contrast to the prior version that focused on a determination as to which party was responsible for the delay." 62 M.J. at 41 (citing *United States v. Dies*, 45 M.J. 376, 377-78 (C.A.A.F. 1996)); *see also United States v. Nichols*, 42 M.J. 715, 720-21 (A.F. Ct. Crim. App. 1995) (analyzing the "sweeping revision" of R.C.M. 707(c)). Given that it no longer "matter[s] which party is responsible" for the delay under R.C.M. 707, the military judge's conclusion of law that the 28-days "are attributable to the defense" is an incorrect view of the law. *Lazauskas*, 62 M.J. at 41. The record nonetheless establishes the delay was excludable because a proper authority approved the 28-day delay and the approval was not an abuse of discretion.

The SPCMCA is a proper authority to exclude delay. R.C.M. 707(c)(1). Trial counsel entered, as part of an appellate exhibit, an email from the SPCMCA dated 22 October 2011 granting the Article 32 defense requested delay. A chronology contained in a stipulation of fact signed by appellant, trial counsel, and defense counsel, admitted as an appellate exhibit for the R.C.M. 707 motion hearing, stated that on 22 October 2011, the "appointing authority" granted the defense's request for delay of the Article 32. The Article 32 officer's appointment memorandum, signed by the SPCMCA, was included as an enclosure to the defense motion to dismiss.[2]

---

[2] The pretrial allied papers also contain defense counsel's request for the Article 32 delay addressed to the SPCMCA. *See generally Arab*, 55 M.J. at 512 n.5.

Each of these documents was received by the trial court for consideration for the speedy trial motion without objection. We therefore find that an authorized person, the SPCMCA, granted the delay at issue.

We further hold that the SPCMCA did not abuse his discretion in approving the 28-day delay. Appellant's request for delay was based on the need to account for the time necessary to process his IMC request and resolve scheduling conflicts. This is certainly good cause for delay under the circumstances. Though a convening authority is not empowered to issue blanket exclusions of time under R.C.M. 707, he may reasonably grant delays predicated on the interval of time between certain events. *United States v. Proctor*, 58 M.J. 792, 795 (A.F. Ct. Crim. App. 2003) (citing *Nichols*, 42 M.J. at 721) (defining a "delay" as "any interval of time between events" and holding that a convening authority was not empowered to grant "blanket exclusions of time" under R.C.M. 707). The 28 days here excluded reasonably constitutes the time required to process the IMC request and resolve scheduling conflicts. Although we recognize there was a delay of approximately one week between the actual denial of the IMC request (28 October 2011) and notification of the denial to defense counsel (4 November 2011), the record establishes that defense counsel was on temporary duty working on other courts-martial for five of those days but was available on 29 and 30 October 2011 for the Article 32. When a delay is granted, the defense may not insist that the proceeding take place immediately following the delay; rather, counsel must reasonably cooperate to reschedule the proceeding. *United States v. McKnight*, 30 M.J. 205, 208 (C.M.A. 1990). That is what occurred in this case between the trial counsel, defense counsel, and the investigating officer in re-scheduling the Article 32 to 21 November 2011, the earliest date all parties were available. The 28-day delay for the Article 32 was therefore properly excluded from the R.C.M. 707 120-day clock.

Appellant's second argument challenges, for the first time on appeal, the 11-day delay granted by the military judge after referral. At trial, appellant did not argue the military judge abused his discretion by either "improperly rel[ying] upon Rule of Practice Before Army Courts-Martial 1.1 to stop the 120 day clock" or by not rendering his decision to approve the delay in writing. We find appellant waived any challenge to the 11-day delay. *See Arab,* 55 M.J. at 511-12 (finding waiver where the period of delay was not challenged by appellant at the trial level).

Assuming, arguendo, the issue was not waived, we examine the merits of appellant's argument, which arose from the military judge's statement in his conclusions of law that: "The R.C.M. 707 clock stopped on receipt of referred charges by the military judge and any time after that was a court approved delay . . . ." The pertinent portion of Rule of Practice Before Army Courts-Martial

5

[hereinafter Rule of Court] 1.1 states: "Any period of delay from the judge's receipt of the referred charges until arraignment is considered pretrial delay approved by the judge per R.C.M. 707(c), unless the judge specifies to the contrary."[3]

At the outset, we reject appellant's argument that Rule of Court 1.1 is inconsistent with R.C.M. 707(c)(1). Rule of Court 1.1 reiterates the authority already granted to military judges under R.C.M. 707 to exclude pretrial delay after referral. As the Preamble to the Rules of Court states: the Rules of Court "supplement the Rules for Courts-Martial and, together with the R.C.M., govern trials by courts-martial presided over by judges assigned to or affiliated with the United States Army Trial Judiciary." Since Rule of Court 1.1 recognizes that military judges have discretion in deciding whether to approve delay between referral and arraignment, we find no inconsistency between Rule of Court 1.1 and R.C.M. 707(c)(1).

Reviewing the record as a whole, we find the military judge knew that appellant's arraignment—and not the receipt of referred charges—"stopped" the R.C.M. 707 clock. Earlier in the motions hearing, the military judge corrected defense counsel during argument, telling him that: "[R.C.M.] 707 is until the beginning of trial – arraignment. . . . Also under Rules of Practice Before Army Courts-Martial, once a judge receives referred charges and then any delay after that is a judge approved delay under R.C.M. 707." Our review of the record also supports a finding that the military judge had authority to approve the 11-day delay, and the military judge did not abuse his discretion in approving the delay in this case. *See Arab,* 55 M.J. at 512*; Lazauskas*, 62 M.J. at 42. Therefore, the 11-day period between the military judge's receipt of the referred charges and arraignment was properly excluded.

Finally, we reject appellant's argument that the military judge must grant any delay in writing.[4] The discussion to R.C.M. 707(c)(1) states: "Pretrial delays *should* not be granted ex parte, and *when practicable*, the decision granting the delay, together with supporting reasons and the dates covering the delay, *should* be reduced to writing." (emphasis added). The discussion sections in the *Manual for Courts-Martial* are non-binding. There is no per se requirement under R.C.M. 707(c)(1) that the military judge must grant any delay in writing.

---

[3] The Rules of Practice Before Army Courts-Martial, dated 15 September 2009, were in effect at the time of appellant's court-martial.

[4] In this case, the military judge announced his decision to approve the 11-day delay on the record in the presence of all parties with a court-reporter transcribing the proceedings.

After conducting a de novo review, we find appellant's right to a speedy trial under R.C.M. 707 was not violated. The proper authorities excluded the delay, and the authorities did not abuse their discretion in excluding the delay because the delays were both granted for good cause and for reasonable periods of time.

### *Unreasonable Multiplication of Charges*

Appellant avers and the government concedes that the violation of a lawful order for loading and firing his weapon within the cantonment area of Fort Knox[5] constitutes an unreasonable multiplication of charges as applied to findings with willfully discharging a weapon in a manner to endanger human life because both charges involved the same firing of the weapon. We disagree and find appellant is not entitled to relief.

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

---

[5] The Article 92, UCMJ, specification alleged: "In that [appellant], having knowledge of a lawful order issued by Colonel (O6) [E.C.S.], to wit: Fort Knox Regulation 210-1, paragraph 2-4, dated 4 Mar 10, an order which it was his duty obey, did, at Fort Knox, Kentucky, on or about 17 July 2011, fail to obey the same by wrongfully loading and firing his privately owned weapon within the cantonment area of Fort Knox, Kentucky."

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338-39.

Upon application of the *Quiroz* factors, we find no unreasonable multiplication of charges as applied to findings.[6] Appellant did not object at trial. Each offense is aimed at a distinct criminal interest: the gravamen of the failure to obey a lawful order in this case is the violation of a regulation allowing commanders to control the use of personally owned weapons in certain areas on-post for the purposes of good order, discipline, and safety, while the gravamen of the willful firing of a weapon in a manner that endangers human life focuses on the protection of human life on or off a military installation. Appellant not only loaded and fired the weapon within the cantonment area of Fort Knox, but he aimed the firing at a barracks building while a soldier was entering the building. The two charges accurately represent appellant's criminality. The number of charges and specifications does not *unreasonably* increase appellant's punitive exposure given that his punitive exposure increased only by six months confinement. Finally, as conceded by appellant, there is no evidence of prosecutorial overreaching or abuse in the drafting of charges.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge KRAUSS and Judge BORGERDING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[6] Although not raised or briefed by the parties, we have analyzed whether, under the facts of this case, the same specifications are an unreasonable multiplication of charges as applied to sentencing. *Campbell,* 71 M.J. at 23 ("[T]he concept of unreasonable multiplication of charges may apply differently to findings than to sentencing."). We find no unreasonable multiplication of charges as applied to sentencing.

8