**UNITED STATES, Appellant,**

v.

**Gilbert L. POWELL, Airman Basic
U.S. Air Force, Appellee.**

No. 93–5013.

CMR Misc. No. 93–06.

U.S. Court of Military Appeals.

Argued July 12, 1993.

Decided Sept. 28, 1993.

For the United States: *Captain Jane M.E. Peterson* (argued); *Colonel Richard L. Purdon, Lieutenant Colonel Jeffery T. Infelise, Captain Thomas E. Wand* (on brief).

For the Accused: *Captain Robert E. Watson* (argued); *Colonel Terry J. Wood-house* and *Lieutenant Colonel Jay L. Cohen.*

*Opinion of the Court*

WISS, Judge.

In this appeal by the Government under Article 62, Uniform Code of Military Justice, 10 USC § 862 (1983), which the court below denied, we are asked pursuant to a certificate for review filed by the Judge Advocate General under Article 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989), to decide whether the military judge and the Court of Military Review were correct in concluding that Powell was denied his right to speedy trial within the meaning of RCM 707, Manual for Courts–Martial, United States, 1984. We hold that they were not correct. *See United States v. Leonard,* 21 MJ 67 (CMA 1985).

I

Powell began a period of unauthorized absence on July 29, 1985. In order to toll the running of the statute of limitations that at that time continued to run even during a period of such absence,[1] the Government preferred a desertion charge against Powell on May 9, 1986. His disappearing act continued, uninterrupted, until he was apprehended and placed in confinement on December 25, 1992. Thereafter, Powell was notified of the preferral of charges on January 28, 1993, and he was arraigned on February 17—only 54 days after resurfacing from his lengthy, self-initiated unavailability.

Immediately following his arraignment, Powell moved to dismiss the charge against him for want of timely prosecution under RCM 707. Prior to Change 5 of the Manual, which was signed by the President on June 27, 1991,[2] and which amended this

---

1. Effective for offenses committed from November 14, 1986, Article 43(c), Uniform Code of Military Justice, 10 USC § 843(c), was amended to exclude "[p]eriods in which the accused is absent without authority or fleeing from justice ... in computing the period of limitations pre-scribed in this section (article)." Pub.L.No. 99–661, div. A. title VIII, § 805(c), 100 Stat. 3908.

2. Executive Order No. 12767, 56 Fed.Reg. 30288–89 (June 27, 1991).

rule (and others), the 120–day speedy-trial clock of RCM 707(a) was triggered, *inter alia*, by "[n]otice to the accused of preferral of charges ..." That change, however—which applied "only to cases in which arraignment occurs on or after 6 July 1991" [3]—altered that trigger to "[p]referral of charges." Powell argued that, since he was arraigned after the effective date of the change, preferral of the charge—which occurred on May 9, 1986—rather than notice of the preferral—which took place on January 28, 1993—was the critical event in his case.

After hearing argument from both parties, the military judge ruled that the 120–day speedy-trial clock began to run for appellant on the July 6, 1991—the date on which the new trigger of RCM 707 became effective: Until that time, RCM 707(a) had not been set off (because Powell had not been notified of the preferral); but, as of that date, it was (because charges had been preferred—indeed, had been preferred 5 years earlier). In turn, the Court of Military Review held that the clock actually had begun to run back on the date of preferral, May 9, 1986, unpub. op. at 3, thereby giving full retroactive effect to the new rule's trigger of preferral of charges. In either case, 120 days had elapsed prior to Powell's arraignment.

## II

In this Court, Powell argues that RCM 707 is clear and unambiguous and, therefore, that he is entitled to this Court's implementation of its plain meaning. Undoubtedly, it is clear and unambiguous that, as of July 6, 1991, the relevant trigger for the rule's speedy-trial clock is preferral of charges, rather than notification to the accused of preferral; undoubtedly, it is

clear and unambiguous, as well, that this new trigger does apply to Powell's case, in light of his arraignment taking place after July 6, 1991. What is decidedly *unclear*, however, is *how* this new trigger is to apply to a case, like Powell's, that straddles the fence of the change in the rule—that is, where preferral of the charge occurred at a time when that event was irrelevant for speedy-trial purposes but where the later change in the rule makes preferral anything but irrelevant.

While the conclusions of the military judge and the court below each have some theoretical merit, neither is fully satisfactory in logic; and both were considered and rejected as viable, rational constructs in *Leonard*. There, for instance, the Court recognized that fully retroactive application of RCM 707 in the new 1984 Manual would cause a situation in which "the Government would have been required to bring appellant to trial before the effective date of the 1984 Manual." 21 MJ at 69. Similarly, here, the holding of the Court of Military Review would require the Government to have tried Powell by September 1986—nearly 5 years before Change 5 of the Manual was promulgated and more than 6 years before Powell was back within reach of the Government after his unauthorized absence had made him unavailable for *anything*. We concluded there, and we agree here, that the Government is not required to comply with a provision in the Manual for Courts–Martial "even before the provision went into effect...." *Id.* at 69.

Furthermore, the *Leonard* Court considered—and rejected—"[a]nother possible interpretation": "that the 120–day limitation of RCM 707 starts to run on [the effective date of the rule in question—here, July 6,

---

3. *Id.*, § 4*d:* "The amendments made to Rules for Courts–Martial 707 and 1010 shall apply only to cases in which arraignment occurs on or after 6 July 1991." 56 Fed.Reg. 30299. *Cf. id.,* § 4*i* ("Nothing in these amendments shall be construed to invalidate any nonjudicial punishment proceeding, restraint, investigation, refer-

ral of charges, trial in which arraignment occurred, or other action begun prior to July 6, 1991, and any such restraint, investigation, referral of charges, trial, or other action may proceed in the same manner and with the same effect as if these amendments had not been prescribed." 56 Fed.Reg. 30300.).

1991—] in cases in which ... preferral ... had already taken place." *Id.* at 69–70. The difficulty with that possibility in *Leonard* was that it would have resulted in the "awkward" application of two different speedy-trial rules to the accused, one before and a different one after the relevant date. *Id.* at 70. That same awkwardness would similarly result here, but there is another difficulty with this theory that is even more imposing in this case: July 6, 1991, was over 5 full months *before* the Government had any idea where Powell was. The consequence of this "possible interpretation," then, would be that an event many years earlier that was legally irrelevant at the time (preferral of the charge) would retroactively work to trigger the start of a 120–day clock several months before the Government physically had it within its power to bring Powell to trial—indeed, the clock would have run its full course over 1 month before Powell was within its grasp.

In view of these considerations regarding the interpretations offered by the military judge and the Court of Military Review, we simply cannot accept any suggestion that, given the absurd results,[4] either application could have been within the President's intent in promulgating the amendment of RCM 707 in Change 5 to the Manual—an intent which it is our responsibility to reasonably ascertain in construing this rule. *Id.* at 69. While proponents of either of those theories might reasonably argue that the rule, strictly read, supports them, that itself suggests a certain ambiguity in the rule. *Id.*

Moreover, neither of those views serves the purpose of RCM 707, which is to assure an accused a speedy trial of a charge against him. From before any charge even was preferred until the date he was apprehended and confined in December 1992, Powell was *never* within control of the United States; and, within 54 days of gaining that control for the first time, the Government arraigned him on the charge emanating from his unauthorized absence. By any reasonable measure, Powell received the speedy trial that is the assurance of RCM 707.

Therefore, we hold that, where an accused has placed himself outside the reach of the Government during all relevant times under RCM 707 so that, by his own misconduct, it is physically impossible for the Government to bring him to trial, the speedy-trial clock of RCM 707(a)—which is fully wound and ready to run as a result of the relevant triggering event—does not begin to tick until the date on which the accused returns to government control. *Cf. United States v. O'Brien*, 22 USCMA 557, 561, 48 CMR 42, 46 (1973) (Government not accountable for periods of accused's unauthorized absence when determining whether presumption of denial of speedy trial under Article 10, UCMJ, 10 USC § 810, arises from more than 90 days' pretrial confinement, *see United States v. Burton*, 21 USCMA 112, 44 CMR 166 (1971)); *accord United States v. Brooks*, 23 USCMA 1, 48 CMR 257 (1974). Under this view, Powell's clock began to run on December 25, 1992, and stopped on February 17, 1993, well within the rule's prescription.

### III

The decision of the United States Air Force Court of Military Review is set aside,

---

**4.**  A statute subject to interpretation is presumed not to have been intended to produce absurd consequences, but to have the most reasonable operation that its language permits. If possible, doubtful provisions should be given a reasonable, rational, sensible, and intelligent construction. These rules prevail where they are not restrained by the clear language of the statute....

The rule favoring a departure from the literal meaning of a statute, where such literal meaning would lead to absurd results, is to be applied only where the absurdity is so gross as to shock the general moral or common sense....

73 Am Jur 2d, Statutes § 265 at 434 (footnotes omitted).

and the appeal by the United States is granted. The charge against Powell is ordered reinstated, and the record of trial is returned to the Judge Advocate General of the Air Force for submission to the military judge for continuation of the trial.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.