### UNITED STATES

v.

**Jimmy G. THOMPSON, Jr., 459 53 5547, Sergeant (E–5), U.S. Marine Corps.**

**No. NMCM 94 01846.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 2 Dec. 1993.

Decided 29 March 1996.

---

LT Evelio Rubiella, JAGC, USNR, Appellate Defense Counsel.

MAJ Steven P. Hammond, USMC Appellate Defense Counsel.

LT Kevin L. Flynn, JAGC, USNR, Appellate Government Counsel.

CAPT David S. Durbin, JAGC, USNR, Appellate Government Counsel.

Before McLAUGHLIN, KEATING and LUCAS, JJ.

LUCAS, Judge:

In this contested case, a general court-martial composed of officer and enlisted members found the appellant guilty of committing two assaults with a knife, both violations of Article 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 928, and sentenced the appellant to 6 months confinement, monetary forfeitures, reduction to pay grade E–1, and a bad-conduct discharge. Except to correct a minor error with the

forfeitures, the convening authority approved the sentence.

We examined the assigned errors[1] and found them to be without merit. We then specified three issues to appellate counsel[2] pertaining to a possible violation of the appellant's right to a speedy trial under Rule for Courts–Martial [R.C.M.] 707, Manual for Courts–Martial, United States, 1984 (1995 ed.) [MCM]. We received excellent written briefs and oral argument on those specified issues. We now address the R.C.M. 707 speedy-trial issue.

The appellant's charges were preferred on 24 March 1993. An officer exercising special court-martial jurisdiction over the appellant (hereafter referred to as the appointing authority) directed that the preferred charges be investigated pursuant to Article 32, UCMJ, 10 U.S.C.A. § 832. R.C.M. 405(c). That investigation hearing was ultimately scheduled to commence on 6 May 1993.[3]

In a 3 May 1993 written request directed to the appointing authority, the appellant asked that the start of the investigation be delayed until 2 June 1993, indicating that he had discharged his civilian counsel and was seeking replacement counsel. Government counsel opposed this second defense continuance request. In his written response, the appointing authority denied appellant's request and confirmed that the investigation was to commence on 6 May 1993. *See* Article 32, UCMJ, 10 U.S.C.A. § 832, Record, Investigating Officer's Exhibit 15 and Appellate Ex. XV at page 6.

The investigation began as scheduled. After being advised of his rights by the investigating officer, the appellant asked the investigating officer to grant him the continuance to obtain counsel. The investigating officer granted the appellant's request and continued the hearing to 18 May 1993. Record at 77–85; Appellate Ex. XV at 3–6. The record does not indicate whether the appointing authority was contemporaneously notified of the appellant's renewed continuance request to the investigating officer or of that officer's decision to grant the continuance.

On 18 May 1993, the investigation hearing began again and a newly hired civilian defense counsel appeared and informed the investigating officer that he was not prepared to proceed. The investigating officer permitted Government counsel to put on his evidence. He also granted the civilian counsel's request to hold the investigation open and reserve his right to present evidence and recall and cross-examine witnesses until 10 June 1993. Record at 77–85. Again, the record does not indicate whether the appointing authority was contemporaneously aware of this additional continuance.

On 9 June 1993, civilian counsel notified the investigating officer that he had nothing to offer and the investigation was closed. Record at 77–85.

On 17 June 1993, the investigating officer submitted his report to the appointing authority and recommended trial by general court-martial.

1. I. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF AGGRAVATED ASSAULT UNDER THE TWO SPECIFICATIONS OF CHARGE I BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT USED A KNIFE IN ASSAULTING EITHER VICTIM.
   II. AN UNSUSPENDED BAD–CONDUCT DISCHARGE WAS INAPPROPRIATELY SEVERE CONSIDERING THE CIRCUMSTANCES SURROUNDING APPELLANT'S OFFENSES AND HIS OUTSTANDING PRIOR SERVICE.

2. I. DOES AN ARTICLE 32, UCMJ, INVESTIGATING OFFICER HAVE THE INHERENT AUTHORITY TO INDEPENDENTLY GRANT DELAYS/CONTINUANCES WHICH ARE EXCLUDABLE FOR SPEEDY–TRIAL PURPOSES?

II. DOES A CONVENING AUTHORITY HAVE THE POWER TO DELEGATE EXCLUDABLE DELAY GRANTING AUTHORITY FOR SPEEDY TRIAL PURPOSES TO AN ARTICLE 32, INVESTIGATING OFFICER?
III. DID THE TRIAL JUDGE ERR BY RULING THAT THE CONTINUANCES GRANTED TO THE APPELLANT BY THE ARTICLE 32, UCMJ, INVESTIGATING OFFICER WERE EXCLUDABLE DELAY FOR SPEEDY TRIAL PURPOSES?

3. The appointing authority for the pretrial investigation had previously approved a defense requested delay of almost 30 days. The parties agree that this initial delay is excluded for R.C.M. 707 purposes.

In a document dated 14 July 1993, Government counsel advised the appointing authority of the two delays granted by the investigating officer and requested that the appointing authority determine whether those defense requested delays were excluded from the speedy-trial clock pursuant to R.C.M. 707(c). In his 17 July 1993 response, the appointing authority indicated that the period from 6 May through 9 June 1993 covering both defense requested delays, was indeed excluded. Appellate Ex. XV, pages 3, 4.

Also on 17 July 1993, the appointing authority forwarded the charges to the officer exercising general court-martial jurisdiction over the appellant and recommended trial by general court-martial. That officer, the convening authority in this case, referred the charges to trial on 20 August 1993.

The appellant was arraigned, stopping the R.C.M. 707 speedy-trial clock on 1 September 1993. R.C.M. 707(b)(1).

At trial, the appellant moved for dismissal on speedy-trial grounds alleging, among other things, that the Government had violated R.C.M. 707 by failing to bring him to trial within 120 days after preferral of charges. The appellant contended that even though he had asked for the two delays from the investigating officer, the delays should not be excluded from the speedy-trial clock because they had not been properly approved by a convening authority as required by R.C.M. 707(c)(1) and because the investigating officer had no independent power to exclude delay for speedy-trial purposes. Record at 70, 76–90, Appellate Ex. XIII.

The trial judge denied the appellant's motion after ruling that, except for 1 day, the delays requested by the appellant were excluded from the speedy-trial clock. Record at 88–90. If that period was not excluded, R.C.M. 707 would have been violated and dismissal would have been mandated. R.C.M. 707(d).

The trial judge reached his decision after concluding that an Article 32, UCMJ investigating officer is a quasi-judicial official with the inherent power to exclude delay from speedy-trial consideration and also that it would be unfair not to exclude the delay expressly requested by the appellant under the circumstances of this case. Record at 88–90.

The appellant's case raises some very important issues regarding R.C.M. 707 and its relationship to investigations conducted pursuant to Article 32, UCMJ. At the outset of our analysis, we are reminded once again of the clarity of the message found in *United States v. Carlisle*, 25 M.J. 426, 428 (C.M.A. 1988); *"ON DAY NUMBER 1, EVERYONE ASSOCIATED WITH A CASE SHOULD KNOW WHAT DAY WILL BE NUMBER 120."*

■ With that guiding principle in mind, we first examine the powers of the Article 32, UCMJ investigating officer to determine whether that official had the inherent, independent power to exclude delay from R.C.M. 707 consideration.

For at least the past 40 years, our superior Court has held that an investigation conducted pursuant to Article 32, UCMJ and R.C.M. 405 is not a mere formality, but instead is an integral part of the court-martial process and judicial in character. *United States v. Davis*, 20 M.J. 61, 65 (C.M.A.1985); *United States v. Samuels*, 10 C.M.A. 206, 27 C.M.R. 280, 1959 WL 3613 (1959); *United States v. Nichols*, 8 C.M.A. 119, 23 C.M.R. 343, 1957 WL 4495 (1957).

Additionally, it is recognized by our superior Court and this Court that the Article 32, UCMJ investigating officer is a quasi-judicial official who must act in a neutral and independent manner. *United States v. Reynolds*, 24 M.J. 261, 263 (C.M.A.1987); *United States v. Payne*, 3 M.J. 354 (C.M.A.1977); *United States v. Freedman*, 23 M.J. 820 (N.M.C.M.R.), *petition denied*, 25 M.J. 219 (C.M.A.1987), *cert. denied*, 484 U.S. 1045, 108 S.Ct. 780, 98 L.Ed.2d 866 (1988).

However, we find no case-law authority for the proposition that such an investigating officer has the inherent power to exclude delay from the speedy-trial clock. Additionally, R.C.M. 707(c) clearly and expressly limits the power to exclude such delay to appellate courts, convening authorities, and military judges. Finally, neither

Article 32, UCMJ nor R.C.M. 405 expressly empower an investigating officer to exclude such delay. We conclude that Congress and the President, pursuant to his powers under Article 36, UCMJ, have elected to not provide Article 32, UCMJ investigating officers with such power.

We need not decide now whether an investigating officer has the inherent, independent authority to grant continuances contrary to the directions of the appointing authority. However, as *Freedman* suggests, an unreasonable interference with an investigating officer's decision to grant a reasonable continuance for good cause may result in relief for an accused.

We do decide that the power of an investigating officer to grant a continuance is different than the power to exclude delay under R.C.M. 707 for speedy-trial purposes. We hold that the investigating officer has no inherent, independent power to exclude such delay. To rule otherwise would result in our making a legislative change to R.C.M. 707(c). That we will not do.

■ Since the appellant's investigating officer had no inherent power to exclude delay, we next determine whether the appointing authority excluded the delay. As we indicated above, the delay in dispute was essentially from 6 May to 9 June. On 14 July 1993, Government counsel advised the appointing authority of the delay, indicated that he did not believe that the Government should be accountable for the delay, and asked that the appointing authority determine accountability. In his 17 July 1993 response, the appointing authority indicated that the delay was excluded for speedy-trial purposes. Appellate Ex. XV.

Although he ultimately was not the convening authority in this case, we conclude that the appointing authority was a "convening authority" as that term is used in R.C.M. 707(c). The term is not defined within R.C.M. 707. The definition section of the Manual for Courts–Martial, R.C.M. 103(6), provides no real assistance. Commanders who qualify as court-martial convening authorities are listed in Articles 22, 23 and 24, UCMJ, 10 U.S.C.A. §§ 822, 823, 824. In situations like the appellant's, an officer hav-

ing court-martial convening authority directs an Article 32, UCMJ investigation, but the ultimate court-martial convening authority is not yet identifiable. We find it reasonable to conclude that the appointing authority, as in this case, who has special court-martial convening power, is a "convening authority" as that term is used in R.C.M. 707(c) and therefore has the power to exclude delay.

■ It is equally clear to us that the entire thrust of R.C.M. 707(c) is that exclusion decisions are to be made before the delay occurs. R.C.M. 707(c)(1) speaks of requests for delay, not requests for an exclusion determination before or after the delay. The analysis of R.C.M. 707(c), found in Appendix 21 of the MCM, likewise discusses a convening authority's power to grant delays (not exclusion requests) and clearly indicates that the Government is accountable for all pretrial time "unless a competent authority grants a delay." Finally, the Discussion following R.C.M. 707(c)(1) provides only examples of decisions regarding prospective delay.

We have no difficulty in concluding that R.C.M. 707(c) requires competent authority, in this case the appointing authority, to grant a delay before it occurs in order for that delay to be excluded from speedy-trial consideration. *See United States v. Dies,* 42 M.J. 847 (N.M.Ct.Crim.App.1995), *petition granted,* 43 M.J. 458 (1995)(Order). Because the purported exclusion made by the appointing authority was made *ex parte* and after-the-fact, it had no effect in excluding delay.

■ Because the investigating officer had no power to exclude delay and because the appointing authority's attempt to exclude delay retroactively was ineffective, we find as a matter of law that the delay was not excluded from the speedy-trial clock. On that ground, the trial judge's ruling was incorrect as a matter of law.

■ Additionally, under the circumstances of this case, we do not accept the notion that it is unfair to hold the Government accountable for delay (34 days) requested by the defense during the pretrial investigation. The 120 days allotted to the Government to bring an accused to trial takes into account

and provides for the need in some cases to conduct such an investigation. *United States v. Longhofer,* 29 M.J. 22, 26 (C.M.A.1989). An Article 32, UCMJ investigation is not an unusual or unique event not anticipated by the 120–day rule in R.C.M. 707. Violation of the 120–day deadline in appellant's case was not the result of the time devoted to concluding the pretrial investigation. Instead, it resulted from a failure of the Government to move the case with dispatch during the 86 days outside the period of the pretrial investigation. On that ground, the trial judge's ruling was clearly unsupported by the facts and erroneous as a matter of law.

■ We find that the appellant's right to a speedy trial under R.C.M. 707 was violated. The only authorized remedy is dismissal. R.C.M. 707(d). After considering all the factors described in R.C.M. 707(d), we conclude that dismissal without prejudice is appropriate.

Accordingly, all charges and specifications are dismissed without prejudice. The record is returned to the Judge Advocate General for action consistent with our decision.

Senior Judges McLAUGHLIN and KEATING concur.