**UNITED STATES**

v.

**Jonathon A. ANDERSON, 551 17 4147, Corporal (E–4), U.S. Marine Corps.**

**NMCM 95 00165.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 10 March 1994.

Decided 7 Feb. 1997.

LT Estela I. Velez, JAGC, USNR, Appellate Defense Counsel.

MAJ David S. Jonas, USMC, Appellate Defense Counsel.

MAJ Richard W. Koeneke, USMC, Appellate Government Counsel.

Before McLAUGHLIN, LUCAS and WYNNE, JJ.

McLAUGHLIN, Senior Judge:

We have examined the record of trial, the summary assignments of error,[1] and the Gov-

---

1. I. THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE MOTION TO DISMISS FOR LACK OF A SPEEDY TRIAL. (Citations omitted.)

II. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF INDECENT ACTS BEYOND A REASONABLE DOUBT IN THAT THE VICTIM, MORE LIKELY THAN NOT, CON-

ernment's reply thereto, and we have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

Contrary to his pleas, the appellant was convicted, by a general court-martial consisting of members, of a single specification of indecent assault on a female in her home, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1994) [hereinafter UCMJ]. The appellant was found not guilty of rape and attempted rape of the same victim. He was sentenced to a bad-conduct discharge, confinement for 6 months, and reduction to pay grade E–1.

## Speedy Trial

■ In his first assignment of error, the appellant asserts that the military judge erred by denying the defense motion to dismiss with prejudice for lack of a speedy trial. At the arraignment session, trial defense counsel made a motion to dismiss alleging that the appellant's right to a speedy trial under both U.S. CONST. amend. VI, [hereinafter Sixth Amendment], and RULE FOR COURTS-MARTIAL 707, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. had been violated. Record at 6–13; Appellate Exhibit VI.

The military judge denied the appellant's assertion that his right to a speedy trial under both the Sixth Amendment and R.C.M. 707 had been violated. Record at 44–45. We agree.

■ R.C.M. 707[2] provides in applicable part that an "accused shall be brought to trial within 120 days of the ... preferral of charges." R.C.M. 707(a). An accused is brought to trial under this rule at the time of arraignment under R.C.M. 904. R.C.M. 707(b)(1). Requests for delay before referral will be submitted to the convening authority [hereinafter referred to as the appointing authority under R.C.M. 405 or convening authority under R.C.M. 707] and requests after referral will be submitted to the military judge. R.C.M. 707(c)(1). Pretrial delay approved by the convening authority or by the military judge is excluded from the 120–day period prescribed by R.C.M 707. R.C.M. 707(c). R.C.M. 707 provides guidance for granting pretrial delays in order to eliminate after-the-fact determinations as to whether certain periods of delay are excludable. MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1984, app. 21, Rule 707 analysis at A21–40. The rule conforms to the principle that the Government is accountable for all time prior to trial unless a competent authority grants a delay. *United States v. Longhofer*, 29 M.J. 22 (C.M.A.1989). The recent case of *United States v. Dies*, 45 M.J. 376 (1996), establishes a judicially-created exclusion of time for unauthorized absence of the accused in computing the 120–day clock. Granted delays are subject to review for both abuse of discretion and the reasonableness of the period of delay granted. *United States v. Maresca*, 28 M.J. 328 (C.M.A.1989).

A brief time-line analysis of the facts in this case is appropriate. On 21 July 1993, the victim was indecently assaulted. Charges of rape and indecent assault result-

SENTED BOTH TO APPELLANT'S PRESENCE IN HER APARTMENT AND TO HIS SEXUAL CONDUCT IN THAT THE VICTIM'S TESTIMONY WAS PATENTLY UNBELIEVABLE WHERE SHE TESTIFIED THAT EVEN THOUGH HE WAS TOUCHING HER BREASTS AND BOTTOM SHE PERCEIVED NO THREAT, THAT EVEN THOUGH HE KEPT TOUCHING HER SHE NEVER ASKED HIM TO LEAVE IN ORDER TO AVOID BEING RUDE, THAT SHE FELT OBLIGATED TO HUG AND KISS APPELLANT, THAT APPELLANT PENETRATED HER WITHOUT AN ERECTION, IN SPITE OF THE FACT THAT SHE WAS IN THE NAVY, COULD CLEARLY BE ASSERTIVE, AND IN SPITE OF MISS QUARLES' TESTIMONY THAT SHE DID NOT HAVE GOOD CHARACTER FOR TRUTHFULNESS. (Citations omitted.)

III. A BAD–CONDUCT DISCHARGE IS AN INAPPROPRIATELY SEVERE SENTENCE IN THIS CASE IN LIGHT OF THE TESTIMONY OF MASTER SERGEANT WHITTAKER, STAFF SERGEANT SANCHEZ, MISS AUMICK, AND IN VIEW OF THE FACT THAT TWO COURT MEMBERS SUBSEQUENTLY STATED THAT A BAD–CONDUCT DISCHARGE IS UNWARRANTED. (Citations omitted.)

2. For easy reference, the R.C.M. 707 cited by us is RULE FOR COURTS-MARTIAL 707, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). It is unchanged from the R.C.M. 707 referred to at trial, which was RULE FOR COURTS-MARTIAL 707, MANUAL FOR COURTS-MARTIAL, 1984, with Change 5 to R.C.M. 707.

ing from this incident were preferred on 23 August 1993. These charges included the charge and specification of which the appellant was convicted. An Article 32, UCMJ, 10 U.S.C. § 832, pretrial investigating officer (IO) was appointed on 30 August 1993 by the officer exercising special court-martial jurisdiction over the appellant. Trial defense counsel sent a letter to the IO, dated 8 September 1993, which requested, in part, that the IO produce:

> The results of the sex crime kit conducted on the alleged victim ... at Yuma Regional Medical Center. It is the defense's understanding that the sex crime kit is in the possession of the government and the government has the means to test the kit for inculpatory/exculpatory evidence.... The defense requests the results of the sex crime kit[3] prior to the commencement of the Article 32 Investigation to allow defense appropriate means to cross-exam [sic] the alleged victim.... Defense Counsel requests that the Investigating Officer recommend to the Convening Authority that the Article 32 Investigation be continued until the government can produce the results of the sex crime kit."

Appellate Exhibit V (footnote added).

On 5 October 1993, the first Article 32 hearing began. The defense counsel stated, "If I may, if I could get a ruling on... I put in a request for a rape kit and what are your thoughts on my request." Appellate Exhibit II at 9. The IO, defense counsel, and government counsel then discussed the R.C.M. 707 120–day speedy-trial clock, the IO's supposed lack of authority to grant a continuance to either party, and the IO's ability to recommend a continuance to the Convening Authority. *Id.* at 9–10. The IO then recessed the hearing until a later time. *Id.* There was no "later time" for this investigation because of the action taken by the convening authority on the defense request.

In a letter dated 13 October 1993, addressed to the trial defense counsel, and titled "Withdrawal of Charges ICO Corporal

J.A. Anderson, USMC," the convening authority stated that:

> 1. In accordance with reference (a), I am withdrawing the charges preferred on 23 August 1993 and 1 October 1993.
>
> 2. In reference (b), you requested the completed results of the sex crime kit conducted on 21 July 1993 by the Yuma Police Department. Apparently, the kit was not forwarded by YPD to its forensics lab. In the interest of justice, to honor your request for evidence that may be favorable to your case and to avoid any prejudice to the accused, I am taking the above action.
>
> 3. Further disposition of charges in accordance with reference (c) is contemplated and will occur promptly upon receipt of the sex crime kit results which will be an estimated 70–80 days from this date.

Appellate Exhibit III. Reference (a) is R.C.M. 604 titled **Withdrawal of charges**. Reference (c) is R.C.M. 401 titled **Forwarding and disposition of charges in general**. It is important to note that from the content of the convening authority's letter above, *supra*, and his testimony at trial, record at 14–16, it appears that the investigating officer conveyed the essence of the defense counsel's 8 September 1993 letter in which "Defense Counsel requests that the Investigating Officer recommend to the Convening Authority that the Article 32 Investigation be continued until the government can produce the results of the sex crime kit." Appellate Exhibit V. The convening authority, Lieutenant Colonel (LtCol) Douglas, testified that he knew it would be about 3 months for the testing to be completed, that it was his intent to refer charges after the test results were received, and that "as far as I was concerned, it was—we'd wait until we received those [test results] back before we would go ahead and continue anything else and the matter was just put aside at that point." Record at 15. LtCol Douglas was asked if he knew the distinction between *withdrawal* and *dismissal.* LtCol Douglas testified: "Well, to a certain extent. I believe withdrawal is that you

---

**3.** This apparently is referred to in Appellate Exhibit IV, the 4 February 1994, Article 32, UCMJ, IO report at DE 6, as a sexual assault collection kit consisting of swabs, smears, aspirate, panties, and hair combings taken from the victim. The references made by counsel to a sex crime kit or rape kit appear to include laboratory results of the analysis of the items collected.

are looking at preferring charges later on down the road and dismissal is a complete dropping of the charges." Record at 14. LtCol Douglas also stated that there was no pretrial restraint imposed on the appellant, he was allowed to perform normal duties, he was allowed to, and did, go on leave and, it was only after the results of the rape kit test were received that he began "the legal process again for preferral of charges." Record at 16.

At this point two items are worthy of note. First, the material collected from the victim as part of the sexual assault collection kit was not "under the control of the Government." R.C.M. 405(g)(1)(B). We understand the word "Government" as used in R.C.M. 405 to mean the U.S. Government. This is logical because there is no subpoena power for an Article 32, UCMJ, 10 U.S.C. § 832, pretrial investigation and, without subpoena power, the U.S. officials have no control over what the U.S. Government does not possess. Therefore, the ability of the defense to force its production under R.C.M. 405(g)(1)(B) is at least questionable. Second, laboratory analysis of the sexual assault collection kit items did not exist. We know of no Government obligation to create evidence for pretrial-investigation purposes.

Be that as it may, the investigation appointing authority viewed it as an important source of information for the defense, and acted accordingly. In so acting, the convening authority was responding to the request from the defense counsel that the investigating officer ask the convening authority for a delay. The convening authority *prospectively* ordered a delay, for good reason. In doing so *prospectively*, he avoided the pitfalls of recent litigation under the current R.C.M. 707. *See United States v. Thompson*, 44 M.J. 598 (N.M.Ct.Crim.App.1996)(holding that an Article 32 investigating officer's, rather than a military judge's or convening authority's, grant of defense requested delay was insufficient to exclude such delay from the R.C.M. 707 speedy-trial clock); *United States v. Dies*, 42 M.J. 847 (N.M.Ct.Crim.App.1995)(stating that after-the-fact attributions of delay are not favored under the current R.C.M. 707), *rev'd on other grounds*, 45 M.J. 376 (1996); *see also United*

*States v. Youngberg*, 38 M.J. 635, 638 (A.C.M.R.1993)(stating that under the current R.C.M. 707, "substituting after the fact exclusions for pretrial approvals is no longer an option for a trial judge."), *aff'd* 43 M.J. 379 (1995).

Our holding is not based solely on the fact that the defense requested a delay to await the requested evidence. Indeed, the appellant argues that the speedy-trial requests negate any such interpretation. Our answer to Assignment of Error I is based on the current R.C.M. 707, and our adoption of the rationale expressed in the recent case of *United States v. Nichols*, 42 M.J. 715 (A.F.Ct.Crim.App.1995). In *Nichols*, the Air Force Court of Criminal Appeals held that delay under R.C.M. 707(c) is not limited to a delay requested by the advocate. The *Nichols* court stated that:

Although R.C.M. 707(c)(1) outlines the procedure when a party requests a delay, that provision does not mandate a request as a condition of exclusion under R.C.M. 707(c).

. . . .

We hold that the plain meaning of R.C.M. 707(c) is that any interval of time between events is a "delay" and, if approved by the appropriate authority, is excluded from the government's accountable time under 707(a). The decision whether to grant a delay is within the sole discretion of the convening authority or military judge, as appropriate. R.C.M. 707(c)(1) (Discussion). Decisions granting or denying delays, and as to the duration of delays, are reviewed for abuse of discretion. MCM, app. 21 at A21–40. However, there need not be a request for a delay from either the accused or the government before a delay is excludable under R.C.M. 707(c); the military judge or convening authority may approve a delay on his or her own initiative.

*Nichols*, 42 M.J. at 720–21.

On 21 October 1993 the appellant sent a letter to the appointing authority stating, "Pursuant to [the withdrawal of charges letter], the Command is contemplating re-referring charges against me for violations of the Uniform Code of Military Justice upon the

Command's receipt of a sex crime kit. I respectfully request that the Command speedily move my case towards trial as the allegations of misconduct are adversely affecting my marriage and my job performance." Appellate Exhibit VIII. Another such letter was sent to the convening authority dated 28 January 1994. *Id.* We agree with the trial judge that these requests were a desire to have the process moved along with dispatch, but did not negate the appellant's desire to have the material in the sexual assault collection kit analyzed. There was nothing unreasonable or oppressive in waiting the 3 months for the test. We note that the convening authority specifically informed the appellant that the test would take 70–80 days from 13 October and the appellant did not withdraw his request for the test results.

The lab report of the rape crime kit was forwarded to the appellant's command on 11 January 1994. On 28 January 1994, the appellant again asserted his right to a speedy trial in writing to his command. On 31 January 1994, a second set of charges were preferred, which mirrored the charges of rape and indecent assault preferred on 23 August 1993. Other charges were not repreferred from that earlier charge sheet. A second, and different, IO was appointed in writing on 1 February 1994 by the same appointing authority as the 23 August 1993 set of charges. On 3 February 1994, an Article 32 hearing was held. All charges were referred to general court-martial on 22 February, and the appellant was arraigned on 28 February 1994.

The military judge made a number of essential findings of fact for R.C.M. 707 purposes, including that: There was no pretrial restraint at any time; the charges preferred on 23 August 1993 began the speedy-trial clock within the meaning of R.C.M. 707; on 8 September 1993 the appellant asked that a sex crime kit be prepared and on 5 October 1994 at the Article 32 hearing he renewed that request; the appellant's request was approved and the results were returned to

the command on 11 January 1994; the appellant's assertion of his right to a speedy trial on 21 October 1993 did not retract his standing request for the sex crime kit results; the Government was accountable for delay from 23 August 1993 to 5 October 1993 and 12 January 1994 until the date of trial, a total of 90 days; the defense was accountable for delay from 6 October 1993 through 11 January 1994, a total of 98 days; and, the appellant's right to a speedy trial under R.C.M. 707 had not been denied him.[4] Record at 45–46.

■ The military judge also made a number of essential findings of fact for Sixth Amendment purposes, including that: The majority of the delay was attributable to the defense request for the sex crime kit results; the appellant asserted his right to a speedy trial on 21 October 1993 and again on 28 January 1994; these speedy trial assertions did not retract his standing request for the sex crime kit results; the degree of prejudice to the appellant was extremely small and not attributable to the Government; and, the appellant's constitutional right to a speedy trial was not violated pursuant to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Record at 46–49.

Inasmuch as the appellant's case comes to us for review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we are not bound by the military judge's essential findings. Nonetheless, we are generally inclined to give them deference. *United States v. Nimmer*, 39 M.J. 924, 927 (N.M.C.M.R.1994), *set aside on other grounds*, 43 M.J. 252 (1995). We find that the Article 32, UCMJ, investigation appointing authority, who we consider a convening authority for R.C.M. 707 speedy-trial purposes, approved a delay under R.C.M. 707(c) and, because we find no abuse of discretion or unreasonable delay, the time from the withdrawal on 13 October 1993 to the ordering of the second Article 32, UCMJ, investigation on 1 February 1994 will be excluded from the speedy-trial calculation for

---

**4.** The continued practice of attributing delay to the Government or the defense is understandable, but outdated. Under the current R.C.M. 707(c), the military judge only need determine what is excludable delay—without attribution—because *even* Government delay can be excluded from the 120-day count.

R.C.M. 707 purposes. *See United States v. Hayes,* 37 M.J. 769 (A.C.M.R.1993). Unlike the military judge, since we find excludable delay rather than resorting to allocation of periods of time, we conclude that the time period from the convening authority's letter stopping proceedings in the case on 13 October 1993 until the test results were in hand and a decision to proceed was made, i.e., the 1 February 1993 order for investigation, is excluded from the R.C.M 707(a) 120–day calculation. We need not determine, as the Government has urged, that the appointing authority meant "dismissal" when he said "withdrawal" and referenced the withdrawal to R.C.M. 604 titled Withdrawal of charges. What is clear to us is that the military judge was correct in denying the motion under R.C.M. 707, because the convening authority approved—in fact ordered—a delay by withdrawing the charges from the incomplete initial Article 32, UCMJ, pretrial investigation to await possible exculpatory laboratory test results *requested by the defense.*

We agree with the military judge that there was no violation of appellant's right to a speedy trial under R.C.M. 707. In doing so we adopt his findings, as modified above, regarding the R.C.M. 707 issue. Additionally, we agree with the military judge that there was no violation of the appellant's right to a speedy trial under the Sixth Amendment, and we adopt the military judge's findings in that regard. Assignment of Error I is therefore without merit.

### Sufficiency of the Evidence

In his second assignment of error, the appellant asserts that the evidence in this case was insufficient to establish guilt beyond a reasonable doubt. This court may affirm only such findings of guilty as it finds correct in law and fact. Article 66(c), UCMJ, 10 U.S.C. 866(c). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational factfinder could have found all the essential elements of the offense(s) beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). When applying this test, we are bound to draw every reasonable inference from the record in favor of the prosecution. *United States v. McGinty,* 38

M.J. 131 (C.M.A.1993). We find that the findings of guilty are legally correct.

The test for factual sufficiency is whether, after weighing the evidence in the record and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. We are so convinced. Assignment of Error II is without merit.

### Appropriateness of the Sentence

In his third assignment of error, the appellant contends that an unsuspended bad-conduct discharge is inappropriately severe. In assessing the appropriateness of a particular sentence, the distinction between appellate review of sentence appropriateness and the power to grant clemency must be kept in mind. "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. Clemency involves bestowing mercy—treating an accused with less rigor than he deserves." *United States v. Healy,* 26 M.J. 394, 395 (C.M.A.1988).

Military courts of criminal appeals are authorized by Congress to review sentence appropriateness, not to grant clemency. The responsibility for exercising clemency powers is left to other officials, including the convening authority, who may grant mercy by reducing the accused's sentence as a matter of "command prerogative." *Id.* at 395.

The appellant in this case submitted a clemency petition and other post-trial matters to the convening authority in accordance with R.C.M. 1105. Ultimately, relief was denied, and we will not reconsider the convening authority's decision on the matter of clemency.

As to the appropriateness of the sentence adjudged by the court in this case, we have given individualized consideration of the nature and seriousness of the offense and the character of the appellant, and have concluded that under the circumstances of this case, the sentence approved below, which included an unsuspended bad-conduct discharge, was

not inappropriately severe. *See United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982)(citing *United States v. Mamaluy,* 10 C.M.A. 102, 106–07, 27 C.M.R. 176, 180–81, 1959 WL 3587 (1959)). Assignment of Error III is therefore without merit.

Accordingly, the findings and the sentence, as approved on review below, are affirmed.

Judge LUCAS, concurs.

WYNNE, Judge (concurring):

The principal opinion does an admirable job of supporting my brothers' conclusion that the trial judge did the right thing for the wrong reason. I write because the law does not preclude us from—but rather directs us toward—adopting a standard of review which avoids such after-the-fact justifications or rationalizations altogether in the present case. "[S]implicity ..., fairness ..., and the elimination of unjustifiable expense and delay" dictate a threshold inquiry. RULE FOR COURTS-MARTIAL 102, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.) [hereinafter R.C.M.]

I would require the appellant to show substantial or presumptive prejudice before we consider whether or not the military judge erred in denying the defense motion to dismiss for want of a speedy trial under R.C.M. 707 or the Sixth Amendment.[1] Because the trial judge, my brothers, and I could find neither substantial nor presumptive prejudice to the appellant on the facts of this case, I join the panel in concluding that Assignment of Error I is without merit and explain my independent reasoning below. *See* Art. 66, UCMJ, 10 U.S.C. § 866.

My rationale allows me to decline to join in either my brothers' efforts to defend an unconditional requirement for contemporaneous rulings on delays or, in the alternative, our higher court's effort to identify "stays and delays [which] are excludable" under R.C.M. 707 without contemporaneous approval. *Compare United States v. Thompson,* 44

M.J. 598 (N.M.Ct.Crim.App.), *certificate of review filed,* 44 M.J. 278 (1996), *and United States v. Dies,* 42 M.J. 847, (N.M.Ct.Crim. App.1995), *rev'd,* 45 M.J. 2, No. 95–5007 (C.A.A.F. June 5, 1996) *with United States v. Dies,* 45 M.J. 2, No. 95–5007 (C.A.A.F. June 5, 1996), and *United States v. Powell,* 38 M.J. 153 (C.M.A.1993). These efforts may be necessary in other cases, but not in this one.

The findings or sentence in this case "may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Art. 59, UCMJ, 10 U.S.C. § 859. *See also United States v. Niles,* 45 M.J. 455 (1996)(specter of tactical advantage). R.C.M. 707's remedy of dismissal "with ... prejudice to the government's right to reinstitute court-martial proceedings against the accused ... at a later date" is one of these substantial rights. R.C.M. 707's lesser remedy of "dismissal ... without prejudice" is not. R.C.M. 707(c)(2). *Compare United States v. Kossman,* 38 M.J. 258 (C.M.A.1993), *with* Daniel P. Shaver, *Restoring the Promise of the Right to Speedy Trial to Service Members in Pretrial Arrest and Confinement,* 147 MIL. L. REV. 84 (1995)(questioning the court's decision in *Kossman* ).

Dismissal without prejudice under R.C.M. 707 remedies the denial of a speedy trial by further delaying the trial, or prejudices the government's case when new proceedings are otherwise barred. When we attempt to retroactively dismiss charges or specifications without prejudice, we choose the oxymoron to which our phrases will be added. "Where the circumstances of delay [in trial] are not excusable ... it is no remedy to compound the delay by starting all over. *Kossman,* 38 M.J. at 262. *See also* Annette M. Sansone, Annotation, *When May Dismissal for Violation of Speedy Trial Act (18 U.S.C.S. §§ 3161–3174) be with Prejudice to Government's Right to Reinstate Action,* 98 A.L.R. FED. 660 (1990).

---

1. U.S. CONST. amend. VI [hereinafter Sixth Amendment]. Out of respect for inspired efficiency, I have adopted the principal opinion's shorthand for RULE FOR COURTS-MARTIAL 707, MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1984, with Change 5 [hereinafter R.C.M. 707]. *United*

States v. Anderson, 46 M.J. 540 n. 2 (N.M.Ct. Crim.App.1997). *See also* Art. 59, Uniform Code of Military Justice, 10 U.S.C. § 859 (1994)[hereinafter UCMJ], *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

This does not mean that the lesser remedy under R.C.M. 707, dismissal without prejudice, has no utility. *Compare Kossman*, 38 M.J. at 262 (Wiss, J., dissenting). There are many foreseeable tactical reasons to seek this relief and many foreseeable reasons, including docket management and pretrial confinement, to grant such relief. Because R.C.M. 707 provides for this remedy, trial judges and convening authorities ought to apply it correctly just as they do the hundreds of other provisions of the MANUAL FOR COURTS-MARTIAL, everyday, all over the world. *See United States v. Edmond*, 41 M.J. 419, *judgment vacated and case remanded on other grounds*, —— U.S. ——, 116 S.Ct. 43, 133 L.Ed.2d 10 (1995).

We, on the other hand, cannot always do in the cool of the evening what could, or even should, have been done in the heat of the day. In this case, review is statutorily mandated, but R.C.M. 707 cannot provide a remedy "contrary to or inconsistent with" the statutory scheme established by the Congress. Art. 36, UCMJ, 10 U.S.C. § 836; *see also* Art. 56 and 66, UCMJ, 10 U.S.C. §§ 856, 866.

Our power is limited by statute and reason. The appellant did not demonstrate substantial prejudice to his defense or presumptive prejudice based on "the interval between accusation and trial." *Doggett*, 505 U.S. at 651, 112 S.Ct. at 2690. There is no claim which "trigger[s] a speedy trial analysis" or warrants "dismissal with prejudice of the affected charges." We should not further consider the alleged denials of any administrative, statutory, or constitutional right to a speedy trial. *Id.; Kossman*, 38 M.J. at 262.

Though we put the procedural issue to rest differently, I specifically join the majority in affirming the legal and factual sufficiency of the evidence and the appropriateness of the appellant's sentence.

